# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| LINDA WAFER | CIVIL ACTION NO. 03-1976 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| JOHN E. POTTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendant, John E. Potter, Postmaster General of the United States of America ("the Post Office"). [Doc. No. 20] Plaintiff, Linda Wafer ("Wafer") has sued the Post Office for alleged discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Defendant moves for summary judgment dismissing all of Plaintiff's claims. Plaintiff filed a document entitled a "Motion to Dismiss or Deny Defendant's Motion for Summary Judgment." [Doc. No. 22] The Court is construing Plaintiff's filing as an Opposition to the motion for summary judgment. For the reasons which follow, the Court finds that there are no genuine issues of any fact material to the motion, and the Post Office is entitled to judgment as a matter of law.

## BACKGROUND

Wafer is a distribution clerk who began working for the Postal Service in 1982. [Doc. No. 20, Att. A (Investigative file) at p. 60] Her complaints against the Post Office date back several years and were the subject of a previous lawsuit which was resolved in favor of the Post Office. [Wafer v. Henderson, Docket No. 99-0873, Western District of

Louisiana] During the time relevant to the instant matter, Wafer was a distribution and window clerk ("DSIS clerk") at the Shreveport Post Office. In the instant lawsuit, Wafer claims that (1) her position as a DSIS clerk was eliminated in 2000 and (2) she was then assigned to a position on the night shift, based on her race (black) and in retaliation for her previous complaints against the Post Office. These are the only two claims currently before the Court.

During the relevant time period, there were two DSIS clerks: Wafer and Ruth Masters (a white female). [Doc. No. 26, Resp. to SUF Nos. 3, 11] Patsy Pigue was the Postmaster from August 2000 through October 27, 2000. [Doc. No. 20, Att. B (Declaration of Pigue)] Pigue asked Jim Person, Manager of Customer Service, to review the clerical operation to attempt to increase efficiency and reduce work hours.[1] [Doc. No. 20, Att. C (Declaration of Person)]. Prior to this audit, approximately 25% of the workload had been transferred to other post offices, yet the same amount of work-hours was being used between Wafer and Master's two positions. [Att. B]

Person performed a desk audit in August 2000.[2] [Att. C] As a result of his audit, Person determined the most effective and efficient course of action was to abolish the "distribution clerk" position and add those duties to the two "DSIS clerk" positions which were then held by Wafer and Masters. [Id.] Person's audit also indicated that the two DSIS clerk positions combined did not always require 40 hours per week, much less 80

---

[1]Although Wafer subjectively believes that the true motivation behind the audit/review was discrimination and/or retaliation, she has offered no competent summary judgment evidence to support her contentions.

[2]Wafer claims that no real "audit" was performed since she claims Person merely observed one employee on one day. Regardless of Wafer's disapproval of the depth of Person's review, Wafer has offered no competent summary judgment evidence to dispute that the review, regardless of what it is called, was indeed performed in an attempt to increase efficiency and reduce work hours.

hours per week. Additionally, Person determined that the nature of the postal operations at the facility indicated a change in scheduled off-days. [Id.] He determined that Saturdays were the lightest workload days and Mondays were the heaviest workload days for DSIS clerks.[3]  [Id.]

As a result of this audit, Pigue concluded that there was not enough work available for Wafer and Masters as DSIS clerks plus a third clerk position in the billing section to justify three full-time positions.  [Att B]  The Agency decided to abolish the billing clerk position and add those duties to the DSIS clerks' job.  It was further determined that the DSIS clerk positions should have a different schedule which would eliminate Mondays off. [Id.] In accordance with the Collective Bargaining Agreement, the new position had to be re-posted for bid due to the change in fixed scheduled days.  [Id.]

On August 11, 2000 Wafer and Masters were notified that their DSIS positions would be abolished effective September 8, 2000, and re-posted in accordance with Article 37.3.A.4.a of the Collective Bargaining Agreement to reflect the new work schedule.  [Att. A at pp. 63, 77, 88-89]  As a result, Wafer and Masters were classified as "unassigned regulars" until the bid process was complete.  It was explained to them that they would have to re-bid for the DSIS position and be the successful bidder in order to get the new position.

---

[3]Wafer strongly disagrees with Person's findings.  However, she has submitted no competent summary judgment evidence to support her contentions. The Union Arbitrator's opinion which criticizes the Post Office's management decisions is not competent summary judgment evidence.  Even if this document were admissible and relevant *(which it is not)*, it still could not defeat summary judgment.  It is not enough for Wafer to create a factual issue as to whether the Post Office's decisions were wrong or mistaken, because the issue is whether it acted with discriminatory or retaliatory animus.

Neither Wafer nor Masters was the successful bidder for the new position.[4] Accordingly, on September 29, 2000, they were both notified that they were being placed on Tour III (from 7:00PM to 3:30AM) with Sunday and Monday as their scheduled days off starting October 7, 2000. [Id. at pp. 65, 78] The change in position did not affect the number of hours Wafer worked, nor did it affect her possibility of transfer or promotion. [Att. B; Resp. to SUF Nos. 34, 35] She remained a full time employee, guaranteed forty hours per week at level 5 pay with the change in her position. [Att. B, Resp. to SUF No. 36] Wafer subsequently bid on a position with Parcel Post Distribution Machine. [Resp. to SUF No. 37] On March 31, 2001, Wafer was awarded the position, which she still holds today. [Id. at Nos. 38, 39]

## LAW AND ANALYSIS

**I.  Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment

---

[4]The position was awarded to a black female. [Resp. to SUF No. 26]

"must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc.,

76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II.   Plaintiff's Retaliation Claim.

Plaintiff's lawsuit complains of two events: (1) the elimination of her former DSIS clerk position, and (2) her assignment to the night shift. She alleges that these actions were both discriminatory and retaliatory. To establish a *prima facie* claim of retaliation, Wafer must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Smith v. AT & T Solutions, Inc., 90 Fed. Appx. 718, 723 (5th Cir. 2004); Fierros v. Tex. Dep't of Health, 274 F.3d 187 (5th Cir. 2001).

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Administrators of Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002)  Thus, "changing locks, restructuring office procedures, clarifying job duties, and taking disciplinary actions in the form of reprimands[ ] do not constitute ultimate employment decisions." Id. at 657-58.

In Mattern v. Eastman Kodak Company, 104 F. 3d 702 (5th Cir. 1997), the Fifth Circuit found that hostility displayed by fellow employees, having tools stolen, supervisors visit the plaintiff's home after she called in sick, a verbal threat of being fired, a reprimand

for not being at her assigned station, a missed pay increase, and being placed on final warning, did not constitute actionable employment actions. As the court in Mattern noted:

> To hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee– anything which *might* jeopardize employment in the future. Such expansion is unwarranted.

Mattern, 104 F.3d at 708 (emphasis in original). Another Fifth Circuit case, Dollis v. Rubin, 77 F. 3d 777, 781-82 (5th Cir. 1995), held that the employee's allegations that she was not considered for a promotion, was not permitted to attend a training conference, had her work criticized by government vendor, was given false information regarding the aspects of her employment, and was denied a desk audit were not actionable adverse actions.

Wafer's retaliation claim must fail as she has offered no evidence that she suffered an adverse employment action. Although she complains that her former position was eliminated and she was reassigned to the night shift, she admits these actions did not affect her pay in any way. After Wafer's former position was eliminated, she was retained as a full time employee and was guaranteed forty hours per week at level 5 pay. [Resp. to SUF No. 36] She further admits that her change in position did not affect the number of hours she worked and it did not affect the possibility of transfer or promotion. [Id. Nos. 34 & 35] Accordingly, Wafer cannot show that she suffered an adverse employment action under the applicable jurisprudence. Since she cannot establish a *prima facie* claim of retaliation, summary judgment is proper as a matter of fact and law.

### III. Plaintiff's Race Discrimination Claim.

#### A. Prima Facie Claim.

In order to prove a prima facie claim of discrimination, Wafer must show: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) someone outside her protected group replaced her. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993).

##### *1. Adverse employment action*

The Fifth Circuit "has a strict interpretation of the adverse employment element" of the prima facie case for discrimination under Title VII. Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004). As discussed supra, the elimination of Wafer's former position and her reassignment did not affect her pay or her possibility of transfer or promotion. Under the undisputed facts, Wafer cannot establish that she suffered an adverse employment action based on these actions. See Roberson v. Game Stop/Babbage's, 05-10308, slip. op., 2005 WL 2622977 (5th Cir. 10/14/05)(unpublished opinion). Accordingly, the Court finds that Wafer has failed to establish this prong of her *prima facie* claim.

##### *2. Replaced by someone outside the class*

Wafer has offered no competent summary judgment evidence that she was replaced by someone outside her class, or that a similarly-situated white person was treated more favorably than her. As to the elimination of her former position, both Wafer and a white co-employee had their positions eliminated at the same time. The successful bidder for the new position was a black female. Accordingly, Wafer cannot establish that she was replaced by someone outside her class, or that a similarly-situated white employee was treated more favorably.

As to her temporary reassignment to the night shift, both Wafer and Masters (a white female) were transferred to that shift. Nevertheless, Wafer alleges in her Opposition that after she was transferred, two white employees were transferred to her former shift. However, Wafer offers no competent summary judgment evidence to support her allegations. Rule 56(c) requires Wafer to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). Her burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Accordingly, the Court finds that Wafer has failed to establish this prong of her *prima facie* claim.

Viewing the facts in a light most favorable to Wafer, the Court finds that she has failed to prove a *prima facie* claim of discrimination, and summary judgment dismissing that claim is proper as a matter of fact and law.

**IV.     Legitimate, Non-Discriminatory Reason.**

The Court finds that Wafer has failed to establish a *prima facie* claim of either discrimination or retaliation. However, even if Wafer could establish a *prima facie* claim, summary judgment would still be proper as she has failed to submit any competent summary judgment evidence that the legitimate, non-discriminatory reasons offered by the Post Office were false, or were a pretext for illegal discrimination or retaliation. Even if Wafer had submitted competent evidence to support the alleged shortcomings of Person's review and conclusions *(which she did not)*, she still could not defeat summary judgment. It is not enough for Wafer to create a factual issue as to whether the Post Office's

decisions were wrong or mistaken, because the issue is whether it acted with discriminatory or retaliatory animus.

Viewing the facts in a light most favorable to Wafer, the Court finds that summary judgment dismissing her discrimination and retaliation claims is proper as a matter of fact and law.

## CONCLUSION

The Court finds that Wafer has not provided sufficient evidence to survive summary judgment. There are no genuine issues as to any material fact. Wafer has not established a claim for discrimination or retaliation. Summary judgment in favor of John E. Potter, Postmaster General of the United States of America, dismissing Plaintiff's claims, is proper as a matter of fact and law.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendant, John E. Potter, [Doc. No. 20] be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims be and are hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 3rd day of January, 2006.



S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE